IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ANETRA GARCIA, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | NO. 3:20-cv-00393-SRW |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| Acting Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

## I.     INTRODUCTION

Plaintiff Anetra Garcia commenced this action on June 11, 2020, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), seeking judicial review of a final adverse decision of the Commissioner of Social Security ("the Commissioner") partially denying her applications for a period of benefits, social security disability ("SSD"), and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("the Act"). *See* Doc. 1. Plaintiff initially filed a Title II application (Application 1) on October 30, 2012, alleging that she became disabled on August 22, 2012. (Tr. 52-53, 1229).[2] Plaintiff's application was denied at the initial administrative level on December 28, 2012. (Tr. 52-65, 1229). Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"), at which she appeared with an attorney. (Tr. 15, 31-50, 76). On February 7, 2014, the ALJ issued an unfavorable decision. (Tr. 15-26). Plaintiff appealed that

---

[1] Kilolo Kijakazi became Acting Commissioner for the Social Security Administration on July 9, 2021, and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] References to the actual transcript pages are denoted by the abbreviation "Tr."

decision, and the Appeals Council denied Plaintiff's request for review on June 12, 2015. (Tr. 1-5). Plaintiff filed an appeal to the United States District Court for the Middle District of Alabama on June 25, 2015. (Tr. 521).

Prior to filing her appeal to federal court, Plaintiff filed another application for a period of benefits and social security disability, as well as an application for SSI benefits (Application 2) on June 23, 2015. (Tr. 734, 1229). Plaintiff's applications were denied at the initial administrative level. (Tr. 695, 700, 1229). On December 7, 2015, Plaintiff requested a hearing before an ALJ. (Tr. 599, 1229). On March 31, 2017, the Middle District of Alabama issued a memorandum opinion and judgment remanding the case (Application 1) back to the Commissioner for further proceedings and further development as to the assignment of weight to Plaintiff's treating physicians' opinion evidence. (R. 521-32, 591, 1229).

On April 19, 2017, Plaintiff received a hearing before an ALJ, at which she appeared with an attorney. (Tr. 591, 1260-98). At the hearing, the ALJ combined the application filed on October 30, 2012 (Application 1) with the applications (Application 2) filed on June 23, 2015 to be decided together. (Tr. 587, 591, 1260, 1263). On May 19, 2017, the ALJ issued a favorable decision finding Plaintiff disabled beginning August 22, 2012. (Tr. 591-98, 1229). On July 25, 2017, the Appeals Council, *sua sponte*, notified Plaintiff that it was reopening the ALJ'S May 19, 2017 decision, remanding both cases, and instructing the ALJ to consolidate both cases and issue a new decision. (Tr. 605). On December 8, 2017, the Appeals Council issued an order vacating both the February 7, 2014 and May 19, 2017 ALJ decisions and remanded the cases to an ALJ. (Tr. 513-18, 1230).

A hearing was held on July 19, 2018, at which Plaintiff appeared with an attorney. (Tr. 480-512). On April 10, 2019, the ALJ issued a partially favorable decision, which found that Plaintiff was disabled from August 22, 2012 through June 7, 2018, and that her disability ended on June 8, 2018. (Tr. 1225, 1250). Plaintiff appealed that decision, and the Appeals Council denied

Plaintiff's request for review on April 27, 2020. (Tr. 467-72). The ALJ's decision therefore became the final decision of the Commissioner. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

In the instant appeal, Plaintiff asks the court to reverse the Commissioner's decision and remand this cause to the Commissioner for a new hearing and further consideration under sentence four of 42 U.S.C. § 405(g). *See* Doc. 1, at 2; Doc. 22, at 26. The case is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Under 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. *See* Docs. 9, 10. Based on its review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the Commissioner's decision is due to be AFFIRMED.

## II.     STANDARD OF REVIEW AND REGULATORY FRAMEWORK

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence") (citations omitted). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). However, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead

must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings.   . . .   No similar presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (citations omitted and bracketed material added).

To qualify for disability benefits and establish his or her entitlement for a period of disability, a person must be unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3] To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520; 416.920.

(1) Is the person presently unemployed?

(2) Is the person's impairment severe?

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on the claimant through step four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *see also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of qualifying disability once he or she has carried the burden of proof from step one through step four. At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id*.

To assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id*. at 1239. To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id*. 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

---

[4] *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits brought under Title II of the Social Security Act. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

## III.    ADMINISTRATIVE PROCEEDINGS

Plaintiff was 35 years old at the time she filed her initial application for benefits, 38 years old at the time of filing her second applications for benefits, and 42 years old at the time of the ALJ's decision. (Tr. 52-53, 1251). Plaintiff is a resident of Wedowee, Alabama, and lives with her daughter. (Tr. 1269). Plaintiff has an 11th-grade education. (Tr. 1270).

Plaintiff claims that her ability to work is limited by panic attacks, anxiety, depression, insomnia, obesity, bipolar disorder, lower back pain, lumbago, spondylosis, and radiculitis. (Tr. 53). Plaintiff previously worked as an "assembler, metal furniture." (Tr. 1271-72, 1290).

Following the administrative hearing, at which Plaintiff and a vocational expert testified, and employing the five-step process,[5] the ALJ made the following enumerated findings:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2.  The claimant has not engaged in substantial gainful activity (SGA) since August 22, 2012, the date the claimant became disabled (20 CFR 404.1520(b), 404.1571 *et seq*., 416.920(b) and 416.971 *et seq*.).

3.  From August 22, 2012 through June 7, 2018, the period during which the claimant was under a disability, the claimant had the following severe impairments: spinal degenerative disc disease status post-surgery, failed back syndrome, sacroiliitis, hypertension, obesity, diabetes mellitus, insomnia disorder, anxiety, bipolar, chronic pain syndrome, thoracic neuritis, carotid artery stenosis and urge incontinence (20 CFR 404.1520(c) and 416.920(c)).

4.  From August 22, 2012 through June 7, 2018, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

---

[5] In determining whether Plaintiff's disability continued, the ALJ employed an eight-step process for her Title II claim and a seven-step process for her Title XVI claim. (Tr. 1233). *See* 20 C.F.R. §§ 404.1594(f) and 416.994(f).

5. From August 22, 2012 through June 7, 2018, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: The claimant could climb ramps and stairs occasionally, but never climb ladders or scaffolds. She could occasionally, stoop, and kneel. She could never crouch or crawl. She could never work around environments with unprotected heights or hazardous mechanical parts. She was limited to simple tasks with occasional interaction with supervisors, coworkers, and the general public and occasional changes in the routine work setting. She would have been off task more than 15% of the time during an 8-hour workday.

6. From August 22, 2012 through June 7, 2018, the claimant was unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was a younger individual age 18-44, at the established disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. From August 22, 2012 through June 7, 2018, considering the claimant's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966).

11. The claimant was under a disability, as defined by the Social Security Act, from August 22, 2012 through June 7, 2018 (20 CFR 404.1520(g) and 416.920(g)).

12. The claimant has continued to have a severe impairment or combination of impairments since June 8, 2018, the date the claimant's disability ended.

13. Beginning June 8, 2018, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1594(f)(2) and 416.994(b)(5)(i)).

14. Medical improvement occurred as of June 8, 2018, the date the claimant's disability ended (20 CFR 404.1594(b)(1) and 416.994(b)(1)(i)).

15.     The medical improvement that has occurred is related to the ability to work because there has been an increase in the claimant's residual functional capacity (20 CFR 404.1594(b)(4)(i) and 416.994(b)(1)(iv)(A)).

16.     Beginning June 8, 2018, the claimant has had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: The claimant can climb ramps and stairs occasionally, but never climb ladders or scaffolds. She can occasionally, stoop, and kneel. She can never crouch or crawl. She can never work around environments with unprotected heights or hazardous mechanical parts. She is limited to simple tasks with occasional interaction with supervisors, coworkers, and the general public and occasional changes in the routine work setting.

17.     The claimant is unable to perform past relevant work (20 CFR 404.1565 and 416.965).

18.     The claimant's age category has not changed since June 8, 2018 (20 CFR 404.1563 and 416.963).

19.     The claimant's education level has not changed (20 CFR 404.1564 and 416.964).

20.     Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

21.     Beginning June 8, 2018, considering the claimant's age, education, work experience, and residual functional capacity, there have been jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966).

22.     The claimant's disability ended June 8, 2018, and the claimant has not become disabled again since that date (20CFR 404.1594(f)(8)).

(Tr. 1234, 1237, 1239, 1241, 1242, 1243, 1246, 1247-48, 1249, 1250).

## IV.    ISSUES ON APPEAL

Plaintiff raises two issues on appeal, arguing that the ALJ implicitly rejected portions of the medical opinion of Dr. Casey Long, Plaintiff's treating pain management specialist, without articulating any rationale for doing so, and that the Appeals Council failed to consider new and material evidence pertaining to the period of disability, which warranted a remand. (Doc. 22, at

15, 20).[6] The Commissioner maintains that the ALJ properly evaluated Dr. Long's opinion and that the Appeals Council properly determined that the additional evidence did not show a reasonable probability that it would have changed the outcome of the ALJ's decision. (Doc. 25, at 5, 7).

## V.     DISCUSSION

### A.     <u>Dr. Casey Long's Medical Opinion</u>

Plaintiff contends that the ALJ ignored portions of Dr. Long's August 23, 2016 opinion that were more restrictive than the ALJ's RFC determination and failed to articulate good cause for rejecting those portions. (Doc. 22, at 16). The Commissioner contends that the ALJ gave weight to Dr. Long's 2016 opinion, finding it was consistent with the record for the closed period, and that Plaintiff cannot ask the court to reweigh the evidence or substitute its judgment for the ALJ's judgment. (Doc. 25, at 6).

An RFC determination is an assessment of what a claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Phillips*, 357 F.3d at 1238-39; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997); 20 C.F.R. §§ 404.1545(a), 416.945(a). "There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 891-92 (11th Cir. 2013).

The opinion of a treating physician "'must be given substantial or considerable weight

---

[6] Plaintiff also raised a third issue, contending that remand under sentence six of § 405(g) was warranted based upon the Commissioner's failure to file a complete administrative record. (Doc. 22, at 25). The Commissioner filed supplemental transcripts to the administrative record. *See* Docs. 23 and 24. Given these filings and Plaintiff's showing no prejudice, the court finds this issue moot.

unless 'good cause' is shown to the contrary.'" *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (citation and internal quotation marks omitted). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The Eleventh Circuit has stated that:

> Where the ALJ clearly articulates specific reasons for failing to give a treating physician's opinion controlling weight, no reversible error exists. Good cause arises where the evidence failed to bolster the doctor's opinion, the evidence supported a contrary finding, or the doctor's opinions were conclusory or inconsistent with his own medical records.

*Pate v. Comm'r, Soc. Sec. Admin.*, 678 F. App'x 833, 834 (11th Cir. 2017) (citations omitted).

Addressing Dr. Long's opinion, the ALJ stated:

> Now, looking at the physical aspects, I again note that Dr. Pahl's opinions are afforded only partial weight (Exhibit 14F) because they come immediately prior to her surgery and then after her surgery, and her condition declined after both opinions were issued, to include the condition of failed back syndrome following surgery. Further, his opinion that she could perform light work also included the opinion that she could only perform part time work. This is more consistent with her ability at the time, which is in fact a range of sedentary work. Dr. Long's opinion receives more weight here, as he treated the claimant's pain and was aware of the impact on concentration from her pain impairment. In fact, he opined that the claimant's impairments of failed back syndrome, lumbar degenerative disc disease, left radiculitis to include symptoms of chronic back pain and left lumbar radiculopathy (Exhibit 28F), pain and other symptoms were severe enough to interfere with her attention and concentration *frequently*. Furthermore, Dr. Long conveyed that the claimant's lumbar epidurals and narcotic treatment could cause drowsiness. Most notably, he opined that the claimant would likely be absent from work as a result of her impairments more than four days per month. His findings limited her to less than sedentary work capacity. This is consistent with the overall record and supports my RFC for the closed period.

> These restrictions would indicate an RFC from an exertional standpoint for less than sedentary work at competitive levels. The musculoskeletal conditions, hypertension, obesity, and fatigue from insomnia disorder and chronic pain syndrome would support postural limitations, avoidance of hazards, and no crouching or crawling, as well as only occasional stooping or kneeling. A limitation of the claimant being off task for more than 15% of the time is supported by Dr. Long's opinion of her pain and other symptoms being severe enough to interfere with her attention and concentration. This is consistent with the evidence of record for the closed period.

(Tr. 1240) (emphasis in original).

The ALJ determined Plaintiff's RFC to be as follows:

I find that, from August 22, 2012 through June 7, 2018, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: The claimant could climb ramps and stairs occasionally, but never climb ladders or scaffolds. She could occasionally, stoop, and kneel. She could never crouch or crawl. She could never work around environments with unprotected heights or hazardous mechanical parts. She was limited to simple tasks with occasional interaction with supervisors, coworkers, and the general public and occasional changes in the routine work setting. She would have been off task more than 15% of the time during an 8-hour workday.

(Tr. 1239).

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.967(a). While sedentary work involves sitting, such work involves a certain amount of walking and standing in carrying out job duties. *Id*. "Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id*. "'Occasionally' means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday." SSR 96-9P, 1996 WL 374185, at *3 (S.S.A. July 2, 1996).

In an impairment questionnaire, Dr. Long determined that Plaintiff could sit for "less than 2 hours" and "stand/walk" for "less than 2 hours" in an 8-hour working day. (Tr. 1053). Additionally, Dr. Long found that Plaintiff, with prolonged sitting, would need to elevate her legs to waist level every 4 hours. (Tr. 1054). Dr. Long also said that she could "rarely" stoop, crouch or twist. (Tr. 1054).

Plaintiff maintains that the ALJ failed to discuss these portions of Dr. Long's opinion, which would have supported a finding of disability. (Doc. 22, at 16-17). Plaintiff argues that

11

because the ALJ later applied, upon finding medical improvement, the same limitations from the first RFC to the second RFC, except for the limitation for off task behavior, her argument applies to the entire ALJ decision, as the evaluation of Dr. Long's opinion is flawed throughout the decision. *Id*. at 17 n.3. Plaintiff also argues that the ALJ failed to specify how much weight was given to Dr. Long's opinion—that is, "Was it entitled to great weight, substantial weight, or controlling weight?" *Id*. at 18.

As for the specific weight afforded to Dr. Long's opinion, the ALJ first stated that he gave "only partial weight" to Dr. Pahl's opinion, but then said that he applied "more weight" to Dr. Long's opinion. (Tr. 1240). The ALJ then provided a summary of Dr. Long's opinion and concluded that Dr. Long's findings "limited her to less than sedentary work capacity," which was "consistent with the overall record and support[ed] [the ALJ's] RFC for the closed period." (Tr. 1240). The ALJ stated that "[t]hese restrictions would indicate an RFC from an exertional standpoint for less than sedentary work at competitive levels," and that "[a] limitation of the claimant being off task for more than 15% of the time is supported by Dr. Long's opinion of her pain and other symptoms being severe enough to interfere with her attention and concentration. This is consistent with the evidence of record for the closed period." (Tr. 1240). The court finds that, in this factual context, the ALJ adequately addressed the specific weight given to Dr. Long's opinion.

However, as to failing to articulate good cause for rejecting those portions of the Dr. Long's August 23, 2016 opinion cited by Plaintiff, the court finds that because the ALJ determined that Plaintiff was totally disabled from August 22, 2012 through June 7, 2018, any error was harmless. *See Pate*, 678 F. App'x at 834-35 (where the ALJ found plaintiff disabled up to May 17, 2012, but not disabled thereafter due to medical improvement, and the ALJ failed to articulate clearly the reasons for giving less weight to the September 2011 opinion of the treating physician, the

Eleventh Circuit found that "Pate correctly stated that the ALJ did not clearly articulate her rationale for affording less weight to Dr. Tippets's opinions. . . . Although it is unclear why the ALJ nominally assigned Dr. Tippets's opinion minimal weight, because the ALJ determined that Pate was totally disabled before May 17, 2012, any error was harmless.") (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (holding that the complained-of error was harmless because it did not have an impact on the step being challenged)).

Accordingly, the court concludes that this claim fails.

### B.  New Evidence Submitted to the Appeals Council

Plaintiff argues that this case should be remanded because the Appeals Council improperly declined to remand Plaintiff's case based on additional evidence that Plaintiff submitted after the ALJ's decision—specifically, Dr. Long's April 15, 2019 opinion in the form of an impairment questionnaire.[7] (Doc. 22, at 21-22). The Commissioner contends that the Appeals Council properly determined that there was no reasonable probability that the additional evidence would have changed the outcome of the ALJ's decision. (Doc. 25, at 7).

In evaluating the submission of Dr. Long's opinion, the Appeals Council stated:

> You also contend that the ALJ closed the record after the hearing in July 2018, and she found medical improvement occurred one month prior to the hearing in June 2018, with the decision being issued in April 2019. You state that the new opinion from Dr. Long shows she is still limited, and the[] ALJ accepted a similar opinion from the same physician in 2016. However, the four new items of medical evidence submitted do not suggest worsening; the new checkmark opinions (requested after the date of decision) are not persuasive, as the ALJ appropriately considered opinion evidence and improvement documented in the hearing records. Even though the ALJ relied on a similar opinion from 2016, the new opinion does not correlate to the improvement noted by the ALJ or the new treating records, which do not document worsening. The new checkmark opinion duplicates the 2016 opinion and was not requested until after the decision was issued. The ALJ

---

[7] Plaintiff submitted additional evidence consisting of records from David Stevens dated from May 8, 2019, records from Cheaha Mental Health Center dated November 7, 2018 through April 4, 2019, records from Tanner Primary Care dated August 3, 2018 through October 11, 2018, and records from Dr. Casey Long dated April 15, 2019. (Tr. 1299-1351). On appeal, Plaintiff raises only a claim as to the rejection of Dr. Long's opinion.

addressed relevant medical evidence of record in finding medical improvement. Although you asserted that improvement prior to the hearing was temporary in your April 15, 2019 correspondence, the actual treating notes submitted do not document worsening of the claimant's conditions.

Accordingly, we do not find that your written exceptions provide a basis for changing the ALJ's decision dated April 10, 2019. In addition, we find that the ALJ's decision complies with the orders of the U.S. District Court and Appeals Council. Furthermore, the decision is consistent with our applicable laws, regulations, and Social Security Rulings.

(Tr. 468).

The court "must consider evidence not submitted to the administrative law judge but considered by the Appeals Council when that court reviews the Commissioner's final decision denying Social Security benefits." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1258 (11th Cir. 2007). Evidence is properly presented if the evidence is "new and material," and it "relates to the period on or before the date of the hearing decision." *See* 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5);[8] *Russell v. Astrue*, 742 F. Supp. 1355, 1382 (N.D. Ga. 2010) (citing *Smith v. Soc. Sec. Admin.*, 272 F. App'x 789, 800-02 (11th Cir. 2008)). The Appeals Council must review a case if properly presented new evidence shows that "there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a). However, if the Appeals Council denies a request for review, it is "not required to provide a detailed discussion of the new evidence or an explanation as to why the claimant's new evidence would not change the ALJ's decision." *Douglas v. Comm'r of Soc. Sec.*, 764 F. App'x 862, 863 (11th Cir. 2019) (citing *Mitchell v. Comm'r of Soc. Sec. Admin.*, 771, F.3d 780, 784-85 (11th Cir.

---

[8] The agency revised 20 C.F.R. §§ 404.970 and 416.1470 in December 2016, effective January 17, 2017, with compliance required as of May 1, 2017. *See* "Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process," 81 FR 90987-01, 90987, 2016 WL 7242991. The revised regulations apply to the date that the appeal is filed. *Rutledge v. Soc. Sec. Admin., Comm'r*, No. 4:20-CV-00708, 2021 WL 4081091, at *12 (N.D. Ala. Sept. 8, 2021) (finding the operative date is the date that the claim is filed for appeal, not the date that the application for benefits is filed) (collecting cases). Plaintiff filed her claim in April 2019, (Tr. 474), so the revised regulations apply.

2014)). "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Evidence is material if there is a reasonable probability that the additional evidence would change the outcome of the decision. *Sanders v. Soc. Sec. Admin., Comm'r*, 854 F. App'x 311, 315 (11th Cir. 2021).

In discussing Plaintiff's history of mental symptomology associated with various factors, the ALJ found that

> treating records indicate improvement and stabilization of conditions (Exhibits l7F, 26F- 40F). In fact, now I find no more than mild limitations in the first B criteria of understanding, remembering, or applying information, and the third B criteria of concentrating, persisting, or maintaining pace has also been reduced from marked to moderate limitation. Cheaha Mental Health Center records at Exhibit l7F from March of 2017 through March of 2018 reveal that her mood is improved (Exhibit 17F/14), she understands her illness (Exhibit 17F/13, 16), she is stable on current medications (Exhibit 17F/17, 23), and reports no problems with sleep or appetite (Exhibit l7F/ 22). Thought, affect, mood, perceptions, insight and judgment, and fund of knowledge, are all within normal limits (Exhibit 17F/22). She reported that she was doing well and viewed her medications as beneficial with no side effects reported (Exhibit 17F/47). February 2017 treatment notes indicate no more than mild anxiety and normal limits on all other areas (thoughts, memory, etc.) (Exhibit l7F/48). March 2017 records reveal that she reported depression twice a week at 2 out of 10 on a 10-point scale (Exhibit l7F/53). She also reported anxiety once per week at a 1 out of 10. She indicate[s] that she was ready to work on social interactions, get out and do more, and that she enjoys fishing, riding to see things, hunting, and watching softball games (Exhibit 17F/60).
>
> Treating records from Cheaha Mental Health center also reveal that the claimant . . . had some added stressors, to include caring for her mother, but she still indicated that the medications improved her symptoms and that although she does not take her sleep medication, she still gets the amount of sleep needed (Exhibit 24F/7). She reported no side effects, no panic attacks, and no crying spells (Exhibit 24F/6). Treating records from October of 2017 reveal better mental health (Exhibit 40F). The claimant also reported that she was concerned that if her disability case were not approved, she would have to return to work and have no one to care for her mother (Exhibit (40F/3).
>
> Once again, the RFC limits are consistent with the overall record. I find that she is limited to simple tasks with occasional interaction with supervisors, coworkers, and the general public and occasional changes in the routine work setting.

(Tr. 1243, 1244).

15

The ALJ stated that Plaintiff's overall record supported mild limitation in understanding, remembering, or applying information, beginning in June 8, 2018, as she provided care for her mother with dementia; she was able to bathe, dress, and groom herself with no assistance; she participated in customary household chores; and she drove and transported her daughter to school. (Tr. 1245). As to interacting with others, the ALJ noted that Plaintiff's activities of daily living and social functioning did not indicate that she was "experiencing significant interference with the ability to perform a wide range of personal, family and household maintenance activities, or with her ability to perform SGA." (Tr. 1245).

In discussing Plaintiff's medical improvement occurring as of June 8, 2018, the ALJ made the following findings:

> Records in 2017 begin to document improvement (Exhibit l7F, 20F-28F, 30F, and 40F). The claimant reports stability of mental health with no medication side effects. She also reports improved physical condition with weight reduction and treatments for musculoskeletal issues. She reported improved range of motion with treatment. Although limited by her impairments, she ambulates independently, and is oriented to person, place, and time upon mental examination. Treating records from the Orthopaedic Clinic continue to show chronic back pain complaints post-surgery (Exhibit 25F). MRI results reveal the prior posterior decompression and fusion with pedicle screws from L5 to S1 (Exhibit 25F/5). There is a minor residual disc bulge and a tiny left lateral disc protrusion. There is no central canal stenosis and there is no organized fluid collection visible. There is only mild left foraminal stenosis and no right foraminal stenosis. Later records from June of 2018 with Center for Pain reveal that she has continued medication therapy and some injections as well (Exhibit 27F). She reported 75% relief with injections on the SI joint and 50% relief on lumbar spine. She reported the current medication increased functioning and she is able to perform activities of daily living with current treatment. Records from Tanner Vascular Surgery around the same time in 2018 indicate no cyanosis or clubbing edema of lower extremities, normal muscle bulk and tone, normal gait, grossly intact cranial nerves, and intact sensation to light touch (Exhibit 30F). The claimant reported some back pain, but without joint, leg or muscle pain and no joint swelling or muscular weakness. Her physical examination reflected no cyanosis, clubbing or edema and normal musculoskeletal bulk, tone and gait. Neurological testing was normal. Records from the Center for Pain indicate effective treatment with pain medication, physical therapy, and epidural steroids (Exhibit 20F/2). Injections increased function (Exhibit 20F/13, 32, 39, 41) and she is able to perform activities of daily living with treatment (Exhibit 20F/l5, 32). Of note, the claimant had gastric sleeve surgery in October of 2017, and her weight decreased by 100 pounds by March of 2018 (Exhibit 20F/34). By

May of 2018, she noted that she has increased range of motion with epidural injections (Exhibit 20F/41). As for diabetes, records from Tanner Primary Care indicate that she is Type 2, without insulin and without complications, and well controlled (Exhibit 16F/12; 21F). Hypertension continues to be benign and controlled with occasional edema (Exhibit 16F/12, 22). Records from Tanner Primary Care indicate that her diabetes was stable and under control with current medication management (Exhibit 26F/2). Although she alleges lower extremity swelling, treatment records at Exhibit 26F indicate no edema on examination.

(Tr. 1246-47).

As to Dr. Long's 2016 opinion, the ALJ stated, "Dr. Long provided his opinion in August 2016. As specifically noted above and below, records after the closed period reflect an improvement. Thus, his opinion is given less weight for the period after the closed period." (Tr. 1247). The ALJ explained, "In coming to this conclusion, I relied heavily on the treatment records. The evidence shows medical improvement for the physical and mental conditions with no suggestion that any criterion was met or medically equaled in any listing." (Tr. 1247).

In comparing Plaintiff's RFC for the period during which she was disabled with the RFC beginning June 8, 2018, the ALJ found that Plaintiff's functional capacity for basic work activities had increased and that due to the improvement of symptoms, she would no longer be off task more than 15% of the time. (Tr. 1247). The ALJ then determined Plaintiff's RFC to be as follows:

> After careful consideration of the entire record, I find that, beginning June 8, 2018, the claimant has had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: The claimant can climb ramps and stairs occasionally, but never climb ladders or scaffolds. She can occasionally, stoop, and kneel. She can never crouch or crawl. She can never work around environments with unprotected heights or hazardous mechanical parts. She is limited to simple tasks with occasional interaction with supervisors, coworkers, and the general public and occasional changes in the routine work setting.

(Tr. 1247-48).

In reaching this determination, the RFC stated, in part, the following:

> At the most recent hearing, she testified that she must elevate her legs 3-4 times per day for swelling. However, treatment records at Exhibit 26F indicate no edema on examination. She reported that she can walk for about 10-12 minutes, and she exercises two to three days per week at the gym for 30-35 minutes each time. She

drives, but says she needs to shop with someone.

She reported that she has some side effects of medications (drowsiness, etc.). She also said she naps often. As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because treating notes document improvement in 2017 through the present. Of note, the claimant had gastric sleeve surgery in October of 2017, and her weight decreased by 100 pounds by March of 2018 (Exhibit 20F/34). By May of 2018, she noted that she has increased range of motion when the epidural injections are most effective (Exhibit 20F/41).

(Tr. 1248).

Plaintiff argues that in finding her disabled during the closed period the ALJ relied heavily on Dr. Long's opinion from 2016, and that the 2019 opinion submitted after the ALJ closed the record did not change from the 2016 opinion. (Doc. 22, at 22, 25). Plaintiff contends that, although the ALJ gave less weight to Dr. Long's opinion after the closed period, Dr. Long's records actually show worsening of her failed back syndrome over time even though her weight did improve with the gastric bypass. *Id*. at 23. In support, Plaintiff compares Dr. Long's examination records from June 25, 2018, which show positive straight leg raises, decreased motor strength in the left lower extremity, and reduced sensation, (Tr. 1042-1045), with Dr. Long's records from 2015, which show negative straight leg raises, normal gait, but hyporeflexia (Tr. 1167). *Id*.

While Dr. Long may have noted on June 25, 2018 that Plaintiff subjectively complained that she had "sharp, aching" pain, rated "as 7/10" that was "made worse with sitting, standing, walking, lying down, driving . . . and physical activity, the ALJ specifically found that "she reported 75% relief with injections on the SI joint and 50% relief on lumbar spine." (Tr. 1042). As to the comparisons between Dr. Long's 2016 and 2019 opinions, the court notes that the 2016 opinion reflected that Plaintiff's leg(s) would need to be elevated with prolonged sitting and that she needed a cane or assistive device when standing/walking, whereas the 2019 opinion noted neither of these restrictions. (Tr. 1054, 716-17). In any event, while the two opinions contained similar restrictions, the ALJ provided good reasons for giving Dr. Long's 2016 opinion less weight,

18

by thoroughly discussing the record as a whole. *See Pate*, 678 F. App'x at 835-36 (finding treating physician's opinion was less relevant than contemporaneous medical records and opinions after the May 17, 2012 closed period as it was inconsistent with later medical evidence, the Court stated that the plaintiff provided "no support for her argument that Dr. Tippets's September 2011 opinion should take precedence over the later opinions, and does not explain why this Court should consider that opinion as controlling over the later opinions."); *see id*. at 836 ("[A]lthough the ALJ impliedly assigned little weight to Dr. Tippets's September 2011 opinion as to the time after May 17, 2012, the ALJ extensively discussed Pate's medical records from after that date. . . . [T]he ALJ determined that those records did not support the limitations in her previous RFC. Therefore, the ALJ impliedly rejected Dr. Tippets's September 2011 opinion as to that period due to its inconsistency with the other medical evidence. This constitutes good cause and substantial evidence supported that determination."); *Bayes v. Comm'r of Soc. Sec.*, 757 F. App'x 436, 445 (6th Cir. 2018) ("[T]he ALJ was not required to explain every piece of evidence in the record and address each check mark from the Physician's Reports.").

Moreover, the Appeals Council properly considered that Dr. Long's opinion, as a checkmark questionnaire which was requested after the date of the ALJ's decision, lacked persuasiveness. *See Collins v. Berryhill*, No. 5:17-CV-249, 2019 WL 1434584, at *17 (N.D. Fla. Mar. 29, 2019) ("[C]ourts have held that medical opinions that are articulated simply by checking blocks on a preprinted form are not persuasive evidence.") (citing *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985) (rejecting that opinion of a non-examining physician who merely checked boxes on a form without providing any explanation for his conclusions)); *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011) ("the AC was free to give little weight to the conclusory assertions contained in the questionnaires because they merely consisted of items checked on a survey, with no supporting explanations"); *Cox ex*

19

*rel. B.C. v. Colvin*, No. 2:14-CV-00461, 2015 WL 4744607, at *5 (N.D. Ala. Aug. 11, 2015) ("[I]n this case, the new evidence consists only of checkmarks without an explanation as to Dr. Morgan's opinions."); *White v. Colvin*, No. 3:15-CV-548, 2016 WL 7341709, at *6 (M.D. Ala. Dec. 19, 2016); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) (noting that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best"); *Hammersley v. Astrue*, No. 5:08cv245-Oc-10GRJ, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) ("check-off forms ... have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions."); *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (opinion was not entitled to considerable weight as "the 'questionnaire' format typifies 'brief or conclusory' testimony"); *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 566-67 (6th Cir. 2016) ("Many courts have cast doubt on the usefulness of these forms and agree that administrative law judges may properly give little weight to a treating physician's 'check-off form' of functional limitations that 'did not cite clinical test results, observations, or other objective findings....'") (citation omitted).

Further, Dr. Long's completed questionnaire did not cite to any medical evidence to support his conclusions. *See Griffin v. Soc. Sec. Admin., Comm'r,* 842 F. App'x 339, 342 (11th Cir. 2021) (finding that the ALJ likely would not give weight to the conclusions in the mental health statement because it did not reference any supporting evidence from the medical record or provide any reference to medical records from the relevant time period to support his conclusion that the limitations did apply during the relevant time period). There also is no showing that Dr. Long examined Plaintiff in completing the questionnaire. *Canela v. Berryhill*, No. 6:17-CV-816, 2018 WL 4237696, at *5 (M.D. Fla. Sept. 6, 2018) ("Dr. Ramesh Patel's opinions are conclusory. He merely filled out a check-off form and provided no support for his opinions.") (collecting cases).

20

The administrative record makes clear that the Appeals Council considered the additional medical evidence that was submitted by Plaintiff but found that this additional evidence did not have a reasonable probability of changing the outcome of the ALJ's decision. Plaintiff fails to show that this additional evidence, considered with the record as a whole, would change the outcome of the ALJ's decision. The ALJ thoroughly discussed the record in concluding that Plaintiff was not disabled after June 7, 2018 and provided good reasons for giving Dr. Long's 2016 opinion less weight. "[T]he ALJ does not need to discuss every piece of evidence in the record." *Raymond v. Soc. Sec. Admin., Comm'r*, 778 F. App'x 766, 775 n.9 (11th Cir. 2019) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision.")).

Because the additional evidence submitted is not material, there is not a reasonable probability that it would change the outcome of the decision. "To the extent Plaintiff disagrees with the ALJ's interpretation of that evidence, that is not a ground for remand." *Horne v. Comm'r of Soc. Sec.*, No. 2:20-CV-181, 2021 WL 3023679, at *5 (M.D. Fla. June 28, 2021), *report and recommendation adopted*, No. 2:20-CV-181, 2021 WL 3022727 (M.D. Fla. July 16, 2021) (citing *Sarria v. Comm'r of Soc. Sec.*, 579 F. App'x 722, 724 (11th Cir. 2014)); *Lanier v. Colvin*, No. CV414-004, 2015 WL 3622619, at *1 (S.D. Ga. June 9, 2015) ("The fact that Plaintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence.") (citing *Crawford*, 363 F.3d at 1158-59).

Accordingly, the court finds that the Commissioner's decision is supported by substantial evidence.

## VI.    CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the

reasons given above, the Commissioner's decision is due to be AFFIRMED.  A separate judgment will issue.

DONE, on this the 28th day of March, 2022.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge